UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

CASUAL DINING DEVELOPMENT, INC.,
ERIC M. TWETEN and DARIN M. TWETEN,

        Plaintiffs,
  v.                                          Case No. 07-CV-726

QFA ROYALTIES, LLC,

        Defendant.
_____

# ORDER

Plaintiffs Casual Dining Development, Inc, ("Casual Dining"), Eric Tweten, and Darin Tweten ("the Twetens") filed a two-count complaint against Defendant QFA Royalties, LLC ("QFA"), alleging claims for declaratory relief related to the Area Director Marketing Agreement between the parties. QFA now moves to dismiss the complaint pursuant to Fed. R. Civ. P. Rule 12(b)(1), 12(b)(3), and 12(b)(6) on the bases of improper jurisdiction, improper venue and failure to state a claim. Alternatively, QFA asks the court to transfer the matter to Denver, Colorado, pursuant to 28 U.S.C. §§ 1404(a) and 1406(a). For the following reasons, QFA's motion to dismiss is granted pursuant to 12(b)(1) and QFA's motion to transfer pursuant to Rule 12(b)(3) is denied as moot.

## BACKGROUND

Casual Dining is a Wisconsin corporation whose daily operations are managed by its shareholders, Eric M. Tweten and Darin M. Tweten ("the Twetens"). QFA is a Delaware limited liability company with its principal place of business in Denver,

Colorado. QFA is a franchisor of the QUIZNOS restaurant chain and successor of the Quizno's Corporation, the previous franchisor. In 1999, the Twetens entered into an Area Director Marketing Agreement ("ADMA") granting them the right to sell Quiznos franchises and provide site and operating assistance within the Milwaukee, Wisconsin, area in return for a $130,000 payment. The Twetens then transferred their rights to Casual Dining (hereinafter, collectively "Casual Dining" for all plaintiffs) and each man retained a 50% interest in the corporation. Under the ADMA, Casual Dining received commissions from initial franchise sales, from the opening of franchise restaurants, as well as from transfers and royalties paid to QFA by franchisees within the Casual Dining territory. The ADMA also requires that Casual Dining open its own business, pay its own lease payments, hire its own employees at its cost, pay its own insurance, pay for marketing and advertising, and pay registration costs. The ADMA further requires that Casual Dining open and maintain a minimum number of franchise stores each quarter. Finally, the ADMA includes a forum selection clause directing that the "exclusive venue" for disputes arising under the ADMA is Denver, Colorado.

In 2006, Casual Dining was sued in separate state and federal court actions in Wisconsin. Based on the resulting negative publicity and dissatisfied franchisees, Casual Dining asserts that it will be unable to fully perform under the ADMA. Casual Dining further asserts that it is entitled to full indemnification from QFA regarding the ongoing lawsuits. In August 2007, Casual Dining filed for declaratory judgment under 28 U.S.C. § 2201 regarding indemnification by QFA for the ongoing lawsuits and

regarding Casual Dining's potential failure to satisfy development quotas under the ADMA due to circumstances outside its control.

**ANALYSIS**

QFA sets forth several grounds for dismissal or transfer of this case. First, QFA argues that the complaint must be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) because Casual Dining's claims are not ripe for adjudication. QFA further argues that the court should dismiss the complaint pursuant to 12(b)(3) because a forum selection clause in the ADMA requires any claims to be brought in Colorado, thereby making the Eastern District of Wisconsin an improper venue. Alternatively, QFA moves the court to transfer the case pursuant to 28 U.S.C. §§ 1404(a) or 1406(a). The court will entertain each of QFA's arguments below.

The Declaratory Judgment Act, 28 U.S.C. § 2201, permits a court to "declare the rights and other legal relations of any interested party seeking such declaration." This statute does not itself confer a court with jurisdiction, nor does it allow a court to dispense with the Article III "case and controversy" requirement. *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 691-92 (7th Cir. 1995). Before deciding whether a declaratory judgment is appropriate, a court must determine whether the case presents an "actual controversy" between the parties. *Molex Inc. v. Wyler*, 334 F. Supp. 2d 1083, 1086 (N.D.Ill. 2004). "Ripeness" is an essential component of any case or controversy and is required for an action to be found justiciable. *See Lear Corp. v. Johnson Electric Holdings Ltd*, 353 F.3d 580, 583 (7th Cir. 2003). The Seventh Circuit has recognized the unique nature of ripeness in an action for declaratory judgment; however, a court

must still determine that a controversy exists and that parties can demonstrate "adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 577 (7th Cir. 1994) (citation omitted). The controversy in question must not be contingent, speculative, or hypothetical; rather, it must be "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical [set] of facts.'" *Sprague Farms, Inc. v. Providian Corp.*, 929 F. Supp. 1125, 1132 (C.D.Ill. 1996) (quoting *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240-41 (1937)).

I. **Indemnity**

Applying these standards to Casual Dining's request for a declaratory order of indemnification, the court finds that no case or controversy exists that is ripe for adjudication because there has been no finding of liability against Casual Dining. Therefore, Casual Dining's adverse legal interests are not sufficiently immediate to warrant declaratory judgment. Casual Dining argues that it brought the indemnification claim due to a contractual limitation in the ADMA which requires that claims between the parties be commenced within one year of the facts giving rise to the claim. Casual Dining argues that under the ADMA, it had to bring this action or lose the right to indemnity against QFA. Currently, Casual Dining is defending against two pending actions, one in Wisconsin State Court, and one in the Green Bay Division of the U.S. District Court for the Eastern District of Wisconsin. As noted

-4-

above, the Declaratory Judgment Act does not dispense with the Article III case or controversy requirement nor does it "give subject matter jurisdiction." *Lawline v. American Bar Ass'n*, 956 F.2d 1378, 1387 (7th Cir. 1992). The Seventh Circuit has noted that as a general rule, an indemnity claim is not ripe for adjudication until after the underlying liability is established. *Lear Corp.*, 353 F.3d at 583. Stated another way, courts have held that when a party has yet to incur any actual liability in an underlying case, a request for indemnity is not ripe. *See Grinnell Mut. Reinsurance Co. v. Reinke*, 43 F.3d 1152, 1154 (7th Cir. 1995).

However, there is a narrow exception to this rule, discussed in *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677 (7th Cir. 1992), under which an actual Article III controversy may exist regarding indemnification even when the underlying case is unresolved. *Id.* at 680. *Bankers Trust* involved an insurance dispute in which the plaintiff requested declaratory judgment finding that the defendant's excess liability insurer had to indemnify the defendant up to the policy limits if the plaintiff won a judgment against the defendant in the underlying fraud suit. *Id.* at 679-83. The *Bankers Trust* court considered the following factors in assessing whether a declaratory judgment on indemnification was ripe: the likelihood of liability in the underlying litigation, the amount of possible damages, and the ability to pay those damages if the party was found liable. *Id.* at 681-82. The court found that even though the plaintiff had only a "probabilistic injury," there was sufficient harm to allow a declaratory judgment on the duty to indemnify prior to resolution of the underlying question of liability. *Id.*

Casual Dining asserts that its claim falls within the narrow exception allowing for declaration of indemnity despite an unresolved underlying claim. However, this court disagrees. The Seventh Circuit's exception allows deviation from the general rule that an indemnity decision should wait until the underlying liability is established, but only under rare circumstances. Those rare circumstances do not exist in the instant case.

The application of an exception for pre-liability declaratory judgment on indemnity in *Bankers Trust* is easily distinguished from the instant case. In *Bankers Trust*, the court concluded that the indemnification claim was ripe based on a consideration of the likelihood that the insured would be liable in the underlying litigation, the high amount of damages for which the insured was likely to be liable, the insured's inability to pay those damages if found liable, and the likelihood that no other insurance policy would cover the damages. *Molex, Inc.*, 334 F. Supp. 2d at 1087 (N.D.Ill. 2004) (citing *Bankers Trust*, 959 F.2d at 681-82). However, a similar evaluation of factors is impossible in the instant case and cannot lead to a conclusion of ripeness. Unlike in *Bankers Trust*, this court has no basis for evaluating the likelihood of Casual Dining's success in defending against its other lawsuits, evaluating the level of liability that would likely be incurred, or evaluating its ability to pay any resulting damages. *See Metalworking Lubricants Co. v. U.S. Fire Ins. Co.*, 460 F. Supp. 2d 897, 901 (S.D.Ind. 2006) (holding that no "actual controversy" existed, thereby depriving the court of subject matter jurisdiction in a motion for declaratory judgment based on the court's inability to evaluate under the *Bankers*

*Trust* factors). Therefore, Casual Dining's claim for declaratory judgment is not ripe because the court cannot conduct an evaluation of similar factors.

The instant case is further distinguishable from the unique circumstances of *Bankers Trust* because Casual Dining is not the victim in the underlying suit and has not yet suffered any injury or liability. In *Bankers Trust*, the plaintiff bank seeking declaratory judgment was the *victim* of an alleged tort by the defendant and had a legally protectible interest in the tortfeasor's insurance policy, giving it standing under Article III. 959 F.2d at 679, 682. In contrast, Casual Dining is a defendant seeking declaratory judgment regarding liability to *other* victims in outside litigation. In addition, the plaintiff victim in *Bankers Trust* suffered a $30 million loss prior to its claim for declaratory judgment. *Id.* at 679. In contrast, Casual Dining has yet to suffer any actual injury or be held liable for any damages. If Casual Dining prevails in its defense against the state and federal lawsuits, any declaratory judgment on indemnity issued by this court would be irrelevant. *See Molex, Inc.*, 334 F. Supp. 2d at 1087-88. Based on the aforementioned, this court appropriately applies the general rule preventing issuance of declaratory judgments on indemnity prior to resolution of the underlying action. *See Metalworking Lubricants Co.*, 460 F. Supp. 2d at 901*.* Therefore, Casual Dining's claim for declaratory judgment on indemnity is not ripe.

Despite this conclusion, the court also addresses Casual Dining's concern regarding the ADMA's one-year contractual statute of limitations on claims between the parties. The ADMA states that "any claims between the parties must be

-7-

commenced within one (1) year from the occurrence of the facts giving rise to such claim, or such claim shall be barred." (Docket #8, Attach. 2, ADMA § 19.3). Casual Dining claims this contractual limitation jeopardizes its "legally protectable interest" in a claim for indemnity, allegedly invoking the *Bankers Trust* exception. 959 F.2d at 682. Based on the ADMA language, Casual Dining asserts that it will be forever barred from bringing an indemnity claim against QFA if the court declines to make a declaratory judgment because more than one year has passed since the initiation of the two lawsuits against it. In contrast, QFA argues that a determination of liability, and not the filing of a lawsuit, triggers the ADMA's contractual statute of limitations. QFA asserts that the contractual limitation will not run until there is a determination of liability against Casual Dining. This court agrees. Therefore, the ADMA statute of limitations does not present a "legally protected interest in recovery" requiring application of the *Bankers Trust* exception. However, in response to Casual Dining's fears, if QFA asserts that the ADMA statute of limitations ran prior to a determination of liability against Casual Dining in future litigation, Casual Dining may justly argue that QFA is equitably estopped from making the argument.

Casual Dining's claim for declaratory judgment regarding indemnity does not merit an exception to the general rule that indemnity claims do not ripen until the underlying liability is established. Therefore, Casual Dining's claim for indemnity is not yet ripe. As a result, the claim does not present a justiciable case or controversy and the court will grant the Motion to Dismiss.

-8-
Case 2:07-cv-00726-JPS   Filed 09/05/08   Page 8 of 18   Document 26

## II. Obligations under the ADMA

Applying the standards for declaratory judgments to Casual Dining's claim regarding its development quota, the court again finds that no case or controversy exists that is ripe for adjudication. The parties spend considerable energy disputing whether two state law affirmative defenses that excuse partial non-performance of contractual duties apply to the lawsuits against Casual Dining and its predicted failure to meet ADMA development quotas. However, the central consideration for the court is whether the plaintiffs' claim is ripe for adjudication and not the applicability of these defenses. The court finds that Casual Dining's claim for declaratory judgment regarding contractual under-performance is not ripe and will be dismissed accordingly.

QFA argues for dismissal by asserting that Casual Dining's claim lacks ripeness for adjudication because it is based on contingent events. QFA further asserts that Casual Dining cannot show that its performance has been rendered impossible by supervening events or that the purpose of its contract has been frustrated. In opposition to dismissal, Casual Dining argues the contractual, affirmative defenses of "partial impossibility" and "frustration of purpose." In essence, these defenses excuse failure to perform contractual duties when failure is due to no fault of the party, but rather, is due to unforeseeable circumstances outside of the party's control. Casual Dining asserts that it will inevitably fall short of ADMA quota due to the "negative attitudes of the franchise consumer towards Quiznos as a result of ongoing litigation" and "bad press against Quiznos." Given QFA's termination of

other Area Directors in the past, Casual Dining alleges that its failure to meet quota will lead to a QFA termination.  Casual Dining also references the Wisconsin Fair Dealership Law ("WFDL") and its purpose to protect dealers against unfair treatment by grantors. Finally, Casual Dining argues declaratory judgment is necessary to prevent the insecurity and danger that an impending breach of its development quota may mean for the livelihoods of the Twetens, their families, and their employees.

Casual Dining's claim lacks ripeness because it is contingent on a series of future events, making a declaratory judgment premature.  A claim for declaratory relief is justiciable where there is a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Lyman v. St. Jude Medical S.C., Inc.*, 423 F. Supp. 2d 902, 905 (E.D.Wis. 2006) (quoting *Alcan Aluminium Ltd. v. Dep't of Revenue*, 724 F.2d 1294, 1298 (7th Cir. 1984)).  No controversy currently exists in the instant case because the parties do not have immediate adverse legal interests.  QFA has not issued a notice of default on the development quota, Casual Dining has not attempted or failed to cure any such deficiencies, and the QFA has not terminated the ADMA.  Casual Dining's claim is not ripe because the string of contingencies that must occur before the parties develop a legal controversy is too long.

Additionally, Casual Dining's arguments regarding the WFDL, the impact on the Twetens, and the affirmative defenses fail to demonstrate the ripeness of its claim.  The plaintiffs correctly assert that declaratory judgment is appropriate when it will "clarify and settle the legal relations at issue" and provide relief from uncertainty,

insecurity, and controversy. *Tempco Elec. Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987). However, a declaratory judgment must still meet the "case and controversy" requirement of Article III, of which ripeness is an essential component. *See Nationwide Ins.*, 52 F.3d at 691-92; *Lear Corporation*, 353 F.3d at 583. A determination that Casual Dining constitutes a "dealer" entitled to protection under the WFDL does not render its claim ripe for adjudication. Similarly, the fact that termination of the ADMA may negatively effect the Twetens' families and employees, though unfortunate, does not render plaintiffs' claim a controversy ripe for adjudication. Finally, the applicability of a "partial impossibility" or "frustration of purpose" defense does not render the claim ripe for adjudication. These defenses only come into play *if* QFA terminates plaintiffs for default, and *if* Casual Dining then brings a claim for breach of contract.

The court finds that Casual Dining's claim for declaratory judgment regarding development quota does not constitute a case or controversy with sufficient immediacy. QFA has not notified Casual Dining of any failure under the ADMA and has not attempted to terminate Casual Dining. As a result, the court will dismiss the claim for lack of ripeness.

### III. Motion to Dismiss Under Rule 12(b)(3) or Transfer

The court dismisses both of Casual Dining's claims for lack of subject matter jurisdiction; however, the court addresses the remaining arguments for the sake of completeness. In addition to its motions to dismiss based on Rules 12(b)(1) and 12(b)(6), QFA alternatively urges the court to dismiss or transfer the case based on

-11-

improper venue. Had plaintiffs' retained any ripe claims, which they do not, this court would transfer the action to Colorado, pursuant to the contractual terms of the ADMA.

A party may present a lack of venue argument, based upon a forum selection clause, brought as a Rule 12(b)(3) motion to dismiss. *Frietsch v. Refco, Inc.,* 56 F.3d 825, 830 (7th Cir. 1995). When a defendant challenges venue "the plaintiff bears the burden of establishing that . . . venue is proper." *Emjayco v. Morgan Stanley & Co.*, 901 F. Supp. 1397, 1400 (C.D.Ill. 1995). To establish venue, Casual Dining must demonstrate that a "substantial part" of the events or omissions occurred within the Eastern District of Wisconsin. *See Schwarz v. National Van Lines, Inc.*, 317 F. Supp. 2d 829, 834 (N.D.Ill. 2004); *see also* 28 U.S.C. § 1391(b)(2). As long as the contacts in Plaintiff's chosen district are substantial, "venue is proper notwithstanding the possibility that [Defendant's] activities may have been more substantial somewhere else." *Moore v. AT & T Latin Am. Corp.*, 177 F. Supp. 2d 785, 788 (N.D.Ill 2001).

A court may also transfer an action to another district in which the action may have been brought originally. *Willis v. Caterpillar Inc.*, 199 F.3d 902, 905 n.4 (7th Cir. 1999). Section 1404(a) states in relevant part: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1406 states: "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406.

-12-

Case 2:07-cv-00726-JPS   Filed 09/05/08   Page 12 of 18   Document 26

To determine the appropriate venue for Casual Dinings' claims, the crucial issue involves the import and effect of the forum selection clause in the ADMA. QFA argues that this court should dismiss the action for improper venue under Rule 12(b)(3), or alternatively, should transfer the action to Colorado, pursuant to a forum selection clause in the parties' ADMA. Specifically, QFA cites the ADMA's section governing disputes, which states in relevant part:

> . . . [I]f a claim is asserted in any legal proceeding involving the AD and the Franchisor, the parties agree that the exclusive venue for disputes between them shall be in the District Court for the City and County of Denver, Colorado, or the United States District Court for the District of Colorado, and each party waives any objection it might have to the personal jurisdiction of or venue in such courts.

(Docket #8, Attach. 2, ADMA § 19.1.) QFA urges the court to consider the clear terms set forth in the ADMA's forum selection clause and transfer this case to Colorado. Casual Dining argues that the public policy of the WFDL requires the case to remain in Wisconsin.

"Like any contract provision, a forum-selection clause will be enforced unless enforcement would be unreasonable or unjust or the provision was procured by fraud or overreaching." *Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992). The Supreme Court and the Seventh Circuit have both held that forum selection clauses are presumptively enforceable. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10-11 (1972); *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1290-91 (7th Cir. 1989). To overcome this presumption,

the challenger of the forum selection clause must demonstrate that the clause is "unfair, unjust, and unreasonable," or that "enforcement would contravene a strong public policy of the forum in which the suit is brought." *Bremen*, 407 U.S. at 15,18.

Casual Dining argues that the forum selection clause in the ADMA is void and unenforceable because it contravenes Wisconsin's strong public policy of protecting dealers embodied in the WFDL. In response, QFA asserts that Casual Dining is not a "dealer" under the law, thus the WFDL is not an applicable public policy. QFA further argues that even if the court deems Casual Dining a "dealer," the WFDL only protects dealers in limited circumstances that do not include the plaintiffs' claims for indemnification or contractual impracticability. If the plaintiffs' retained ripe claims, which they do not, this court would apply the forum selection clause to transfer the case to Colorado because the WFDL is not implicated by Casual Dining's claims. Thus, the WFDL does not constitute a strong public policy overcoming presumptive enforceability of the forum selection clause in this case.

The applicability of the WFDL to a case may render a forum selection clause unenforceable. *See Van's Supply & Equipment, Inc. v. Echo, Inc.*, 711 F. Supp. 497, 503 (W.D.Wis. 1989). However, for the WFDL to overcome the presumption of enforceability in a particular case, it must necessarily apply. The plaintiffs' claims do not implicate the WFDL, therefore, the public policy that the WFDL represents cannot prevent application of the forum selection clause.

Casual Dining's claims do not implicate substantive provisions of the WFDL because QFA did not attempt to terminate or alter Casual Dining's ADMA. The WFDL protects dealers by prohibiting grantors from terminating dealerships without good cause. *Frieburg Farm Equipment, Inc. v. Van Dale, Inc.*, 978 F.2d 395, 398 (7th Cir. 1992). The statute provides further protection by granting dealers the right to three months' notice and an opportunity to cure deficiencies. *Home Protective Services. v. ADT Security Services, Inc.*, 438 F.3d 716, 719 (7th Cir. 2006). However, these protections apply to situations in which a grantor terminates, cancels, fails to renew or substantially changes the competitive circumstances of a dealership agreement. Wis. Stat. § 135.03 (2007). The WFDL reads in relevant part:

> **135.03. Cancellation and alteration of dealerships.**
> No grantor, directly or through any officer, agent or employee, may terminate, cancel, fail to renew or substantially change the competitive circumstances of a dealership agreement without good cause.
>
> **135.04. Notice of termination or change in dealership.**
> Except as provided in this section, a grantor shall provide a dealer at least 90 days written notice of termination, cancellation, nonrenewal or substantial change in competitive circumstances. The notice shall state all the reasons for termination, cancellation, nonrenewal or substantial change in competitive circumstances and shall provide that the dealer has 60 days in which to rectify any claimed deficiency. If the deficiency is rectified within 60 days the notice shall be void.

Wis. Stat. § § 135.03, 135.04 (2007). The plaintiffs' claims for declaratory judgment regarding indemnity and failure to meet the ADMA quota do not trigger the protections of the WFDL. Casual Dining does not allege that QFA terminated,

-15-

cancelled, nonrenewed, or substantially changed its dealership, nor does Casual Dining allege insufficient notice of any such event. Instead, Casual Dining asks this court for declaratory judgments, presumably to prevent a possible *future* termination of its arrangement with QFA. However, the plaintiffs' cannot invoke the WFDL as a shield when there has been no attack. QFA has neither effected nor attempted to "terminate, cancel, fail to renew or substantially change the competitive circumstances" of Casual Dining. Wis. Stat. § 135.03 (2007). As a result, the public policy represented by the WFDL has not been invoked.

As the plaintiffs point out, the Western District of Wisconsin found that the WFDL invalidated forum selection clauses in two cases. However, the cases in question included claims under the WFDL while the instant case does not. In *Van's Supply & Equipment*, the court states that the defendant's forum selection clause does not compel transfer to a different venue because "[i]n this case Wisconsin has a strong interest in enforcing the [WFDL]." 711 F. Supp. at 503. However, the court also notes that "Plaintiff has sued defendant under the Wisconsin Fair Dealership Act." *Id*. In contrast, Casual Dining states no claim under the WFDL. Similarly, in *Brown Dog, Inc. v. Quizno's Franchise Co., LLC*, the court found the forum selection clause to be unenforceable because it violated Wisconsin's "strong public policy of protecting dealers from overweening grantors." 2004 WL 1114427, at *3 (W.D.Wis May 13, 2004). However, the plaintiff in *Brown Dog* received a termination notice

from the defendant,[1] and alleged in its complaint that the defendant violated the WFDL. *Id.* at *2. In contrast, Casual Dining did not receive a termination notice from QFA, nor did it allege a substantive violation of the WFDL in its complaint. This court interprets *Van's Supply* and *Brown Dog* to stand for the proposition that a forum selection clause is unenforceable when the protections of the WFDL are invoked. However, the public policy considerations that prevented enforcement of the forum selection clauses in the aforementioned cases do not apply in the instant case. Thus, the forum selection clause in the ADMA is an enforceable contract provision. As a result, pursuant to the clause, Denver, Colorado, is the proper venue for Casual Dining's claims.

Accordingly,

**IT IS ORDERED** that the defendant's second motion to dismiss pursuant to Fed. R. Civ. Pro 12(b)(1) (Docket #21) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the plaintiffs' motion for oral argument (Docket #16) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the plaintiffs' motion for leave to file a second declaration of Darin M. Tweten (Docket #18) be and the same is hereby **GRANTED**;

---

[1] The court notes that the cited case is particularly relevant. The *Brown Dog* case involved the same defendant, Quizno's, and the same Area Director Marketing Agreement specifying Denver, Colorado, as the exclusive venue for all disputes. 2004 WL 1114427, at *1. Despite these commonalities, the court distinguishes the cases because Quizno's attempted to terminate the plaintiff in *Brown Dog*, invoking the public policy of the WFDL, but made no similar attempt in the instant case.

**IT IS FURTHER ORDERED** that the defendant's first motion to dismiss (Docket #10) be and the same is hereby **DENIED** as moot.

The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 5th day of September, 2008.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge